## HART *vs.* THE STATE.

[INDICTMENT FOR GAMING,]

1. *Ex-post-facto law ; conviction on testimony of accomplice.*—The act approved December 5, 1863, providing that section 3600 of the Code, which prohibited a conviction in a criminal case on the uncorroborated testimony of an accomplice, "shall not extend to trials on indictments for misdemeanors," does not apply to prosecutions for misdemeanors committed prior to its passage : to make it apply to such cases would be violative of the constitutional provision against *ex-post-facto* laws. (WALKER, C. J., *dissenting.*)

FROM the Circuit Court of Henry.
Tried before the Hon. J. McCALEB WILEY.

THE bill of exceptions in this case is as follows :

"The defendant was indicted at the November term, 1860, of said circuit court, for gaming ; the indictment being in the usual form. On the trial, at the present fall term, 1865, the State introduced a single witness, one W. J. Singletary, who testified, that within the twelve months before the finding of the indictment, and within said county, he saw the defendant and others play a game of cards ; that the playing took place in a house formerly used as a shoe-shop, but which was used at the time of the playing, and for several months previously, as a bed-room by an old man named Grace ; that no business was carried on or transacted there ; that persons frequently resorted thither for the purpose of playing ; that said witness and defendant were in co-partnership in betting on said game, or 'going halves' with each other ; and that he (witness) frequently played defendant's hand in said game. This being all the evidence in the case, the defendant demurred thereto—1st, because the evidence was not sufficient to convict the defendant, as it did not show that said playing took place at any of the places prohibited by section 3243 of the Code ; 2d, because the witness was an

Hart v. The State.

accomplice, and no conviction could be had, under section 3600, on his uncorroborated testimony; and that the act amendatory of said section, approved December 5, 1863, when applied to an indictment found before its passage, is *ex post facto ;* and that the defendant should have his case passed upon under the law which was of force at the finding of the indictment. The solicitor, on the part of the State, joined in the demurrer, and the court overruled the demurrer; to which the defendant excepted. The court then rendered judgment against the defendant, for twenty-five dollars, and costs; to which the defendant excepted."

W. C. OATES, for the prisoner.—The demurrer to the evidence ought to have been sustained, because the playing was not at any of the places prohibited by the statute; and because the only witness for the State was an accomplice, whose uncorroborated testimony was not sufficient to authorize a conviction.—Code, § 3600 ; *Davidson v. State,* 33 Ala. 350 ; *English v. The State,* 35 Ala. 428. To sustain a conviction in this case, on the uncorroborated testimony of an accomplice, under the amendatory act approved December 5, 1863, would be violative of the constitutional prohibition against *ex-post-facto* laws.—*Calder v. Bull,* 3 Dallas, 391; 1 Kent's Com. 408.

JNO. W. A. SANFORD, Attorney-General, *contra.*—1. A room, to which persons frequently resort for the purpose of playing cards, is within the prohibition of section 3243 of the Code.—*Cameron v. The State,* 15 Ala. 384; *Campbell v. The State,* 17 Ala. 370 ; *Coleman v. The State,* 20 Ala. 370 ; *Windham v. The State,* 26 Ala. 71.

2. The act approved December 5, 1863, amendatory of section 3600 of the Code, merely fixes the value of a particular kind of evidence in certain cases, but does not introduce a new kind of evidence, nor make criminal an act which was innocent when committed, nor increase the penalty of offenses already perpetrated. It is, therefore, not an *ex-post-facto* law, in its application to this case. 1 Bishop's Criminal Law, § 108 ; Story on the Constitution, § 1345 ; *Calder v. Bull,* 3 Dall. 391.

JUDGE, J.—By both the Federal and State constitutions, the legislature is prohibited from passing *ex-post-facto* laws; and it is well settled, that the phrase *ex post facto*, in these constitutions, extends to *criminal*, and not to *civil* cases. What are *ex-post-facto* laws, within the meaning of the prohibition? As early as 1798, in *Calder v. Bull*, (3 Dallas, 386,) the supreme court of the United States, in considering whether an act of a State legislature was in violation of the prohibition against *ex-post-facto* laws, deemed it expedient to define fully the meaning of that provision in the constitution; and it was held that the prohibition included—1st, every law that makes criminal an action done before the passing of the law, and which was *innocent* when done, and punishes such action; 2d, every law that *aggravates* a *crime*, or makes it *greater* than it was when committed; 3d, every law that *changes the punishment*, and inflicts a *greater* punishment than the law annexed to the crime when committed; 4th, every law that alters the *legal* rules of evidence, and receives *less* or *different* testimony than the law required at the time of the commission of the offense, *in order to convict the offender*. All these, and similar laws, it was held, are prohibited by the constitution. This statement of what are *ex-post-facto* laws, within the words and intent of the constitutional prohibition, has since been generally adopted and followed by the different courts, whenever the question has arisen. Chancellor Kent quotes it, in substance, without disapproval; and Judge Story, in his Commentaries on the Constitution, says, it has been, and is, the general interpretation.—1 Kent, 409; 2 Story's Com. on the Con. 1345.

We will now apply the fourth clause of this interpretation to the case before us. The defendant in the court below was indicted, in 1860, for playing at cards, against the prohibition of the statute. At the time the indictment was found, and before the alleged commission of the offense, section 3600 of the Code was in full force, and applied to all criminal prosecutions. That section was as follows: "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by such other evi-

Hart v. The State.

dence as tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof." Pending the prosecution against the defendant, the legislature passed an act, approved December 5th, 1863, which is as follows: "That section 3600 of the Code shall not extend to trials on indictments for misdemeanor."—Sess. Acts, '63, p. 73. The offense for which the defendant was indicted, is a misdemeanor; and on the trial in the circuit court, an accomplice in the criminal act was introduced as a witness against him. By the sole, uncorroborated testimony of this accomplice, the defendant, under the ruling of the court, was convicted; convicted by testimony which the law delared *insufficient* to produce conviction, at the time of the alleged commission of the offense. How was this effected? by a change in the law—by an act of the legislature, under the influence of which the court must have acted, which altered a legal rule of evidence, and received *less* testimony than the law required at the time of the commission of the offense, *in order to convict the offender*.

A construction which gives to a statute a retrospective effect, has always been esteemed odious, and will never be indulged unless the language employed requires it. Such statutes are justly considered as violative of every sound principle.—Dwarris on Statutes, 681; Shepherd's Digest, p. 745, § 17. Besides, to give the act of December, 1863, retroactive effect, would make it an *ex-post-facto* law, within the meaning of the constitution. We are constained to hold it can have no such effect. It follows that the circuit court erred in rendering judgment against the defendant, on the demurrer to the evidence.

This view renders it unnecessary to notice any other question in the case.

Let the judgment be reversed, and the cause be remanded.

A. J. WALKER, C. J.—By a law of this State, a conviction upon the uncorroborated testimony of a certain class of witnesses was prohibited. This law was subse-

quently repealed as to misdemeanors. The argument that the repealing law, in its operation upon antecedent offenses, is *ex post facto*, rests entirely upon the announcement by the supreme court of the United States, that a statute is *ex post facto* which alters "the legal rules of evidence", and receives "less or different testimony" "in order to convict the offender".—1 Kent's Com., m. p. 409. This principle has been incorporated into the American text-books and American decisions, on the high authority of the supreme court of the United States, with but little comment or explanation. I understand the rule to refer to changes in the measure or character of evidence requisite to conviction, and not to cautionary regulations as to the instruments by which the evidence is conveyed to the jury. The evidence necessary to convict is not changed by the later statute in this case. A criminal cause may be affected by a change in the instruments of evidence, produced by social influences, precisely analogous to that which is effected by the alteration of the law now in hand. A witness, upon whose testimony a conviction depends, may be of such bad reputation when an offense is committed, that a jury could not credit him, or convict on his uncorroborated testimony; and by good conduct, or the correction of false impressions, his reputation may be restored before the trial, and a conviction legally and properly obtained upon his uncorroborated evidence. It might as well be said that the evidence necessary to convict was thus changed by social influence, as that such a change has been produced by the law in this case. There is here no change of the ingredients of the offense, or of the facts which constitute guilt. There is a mere change of a rule of credibility. The old law attached to an uncorroborated accomplice an unvarying presumption of incredibility. This presumption is withdrawn in misdemeanors by the later law; and this withdrawal by no means effects any alteration of the degree, measure, or character of evidence, necessary to convict. I therefore think that the law is not *ex post facto*, and dissent from the opinion of my brethren.

BYRD, J.—Since the delivery of the opinion in this cause, the Chief Justice has filed a dissenting opinion, which he intimated at the time he reserved the right to do. After hearing it read, I deem it proper to express my adherence to the conclusion arrived at in the former, and to submit my reasons therefor.

The construction of the constitutional provision against *ex-post-facto* laws, given in the case of *Calder v. Bull*, (3 Dal. 391,) has been too long acquiesced in and recognized, by repeated and uniform adjudications, to be now disturbed ; and it seems to me that the only open question is as to its application to cases as they may arise. A majority of the court hold, that the rule which prohibits the conviction of a person, charged with the commission of an offense, " upon less or different " testimony than was required by law at its commission, is applicable to this case.

At the time the offense is alleged to have been committed, the appellant could not have been convicted on the evidence upon which he was convicted. To convict him, the law required, as it stood at the time the offense is alleged to have been committed, the additional evidence of another witness, besides an accomplice, to prove such corroborating facts " as tend to connect the defendant with the commission of the offense ; and the corroboration is not sufficient, if it merely show the commission of the offense, or the circumstances thereof."—Code, § 3600. Upon the trial, he was convicted on the uncorroborated testimony of an accomplice, which, at common law, was looked upon with great suspicion ; and it seems to me that such flimsy and unreliable testimony is less than, if not different from, that required by law at the time the offense is alleged to have been committed ; and would seem to dispense with the *material* rule, that such testimony must be corroborated by evidence which tends " to connect the defendant with the commission of the offense". It, of course, required the additional testimony of another witness, not implicated with the offender ; for no number of accomplices would have met the requirements of the law. If, then, the conviction on the sole testimony of an accomplice, is not less

evidence than that required at the time of the alleged commission of the offense, as shown, it is difficult for me to conceive what is meant by the rule laid down in *Calder v. Bull, supra.*

To hold the law to be otherwise than as declared and applied in this case, would, in the opinion of a majority of the court, be to announce the proposition, that the legislature might pass an act authorizing the conviction of a defendant upon less evidence when he is tried than was *positively required by law* for his conviction when the offense was committed, in disregard of the interpretation of the constitutional inhibition against the passage by the States of *ex-post-facto* laws. In addition to the authorities cited in the opinion of the court delivered by Justice JUDGE, we refer to the following : *Woart v. Winnick,* 3 N. H. Rep. 475 ; *Carpenter v. The State of Pennsylvania,* 17 How. (U. S.) Rep. 463. In this latter case, Justice Campbell, in delivering the opinion of the court, approves by citing the above cases, though by some clerical mistake the case in 3 N. H. Rep. is referred to page 375, instead of 475. He also cites 6 Cranch, 87 ; 8 Peters, 88 ; 11 *ib.* 421 ; 5 Mon. 133 ; 9 Mass. 363 ; 6 Binn. 271 ; and 4 Geo. 208, which announce an adherence to the rules laid down in *Calder v. Bull.*

These views, and a reference to the above authorities, have been called forth in response to the dissenting opinion of the Chief Justice, and not from any substantial doubt as to the conclusiveness of the reasoning or the correctness of the conclusion of the opinion of the court delivered by Justice JUDGE.